UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HECTOR RIVERA | ) | |
| | ) | |
| v. | ) | CASE NO. 05-3044 MAP |
| | ) | |
| CITY OF SPRINGFIELD, ET AL | ) | |

|  |  |  |
|---|---|---|
| GEORGE OLIVERAS | ) | |
| | ) | |
| v. | ) | CASE NO. 05-3045 MAP |
| | ) | |
| CITY OF SPRINGFIELD, ET AL | ) | |

### Opposition to Request for Immediate Relief

The defendants[1] hereby oppose plaintiffs'[2] motions for temporary restraining

orders in the above captioned cases[3]. This opposition memorandum is limited to the only

---

[1] The City of Springfield ("Springfield"); the Springfield Public Schools; Superintendent
Dr. Joseph P. Burke ("Dr. Burke"), Principal Dr. Ann Stennett ("Dr. Stennett"); Assistant
Principal Mr. Thomas O'Brien ("Ass't Principal O'Brien"); and Assistant Principal Mr.
Kolajo Afolabi ("Ass't Principal Afolabi") hereinafter collectively called "defendants".
The appearance of the undersigned counsel on behalf of Dr. Stennett is limited to the said
motion and this opposition for reasons set forth in footnote one of Defendants' Motion to
Postpone Scheduled Hearing ("Motion to Continue") that is incorporated herein by
reference.

[2] A cursory review of the complaints in the captioned cases reveals that the incidents
complained about in almost all, if not all, relevant aspects are identical. Consequently,
defendants will refer collectively to each separate plaintiff as "plaintiffs" for purposes of
this memorandum.

[3] These two cases are referred to collectively as the "litigation" for purposes of this
memorandum.

46302

1

issue before the court for hearing "the appropriateness of immediate relief to the students." The reason for this limitation is practical and temporal[4] as well as legal[5]; however, defendants' acceptance of these realities should not be construed as any form of tacit admission with respect to plaintiffs' position or contentions in this litigation. Defendants reject the idea that plaintiffs are legally entitled to any type of judicial relief in this litigation.[6]

Factual Background

In their complaint plaintiffs allege that "[o]n or about December 14, 2004" they "were arrested by the State Police and Springfield Police Department and charged with delinquency felony counts of arson, breaking and entering and destruction of private property."[7] The plaintiffs' complaints, however, fail to describe the incident for which plaintiffs were arrested. Although plaintiffs' identities were not revealed to the public at the time of their felony arrests[8], the despicable nature of the crimes for which they were arrested received a great deal of media attention and are still notorious in Springfield. The crimes occurred on or about December 8, 2004. On December 15, 2004, the day after plaintiffs' were arrested, a front page article in The Republican states:

---

[4] See Motion to Continue.

[5] See Endorsement on Order entered in this litigation on 2/23/2005 at 8:36 AM denying the Motion to Continue.

[6] Defendants need additional time to fully establish the factual basis for our position and to completely explain the law regarding it. The reasons for this are set forth in the Motion to Continue.

[7] Plaintiffs' complaints, ¶11 first sentence.

[8] The identities of the plaintiffs' were kept from the media.

> Police charged seven Springfield teenagers with setting the fire last week that destroyed the Al-Baqi Islamic Center at 495 Oak St. and sparked suspicions among area Muslims that they had been targeted because of their religion.
>
> The arrests beginning Monday night came slightly less than a week after a fire Dec. 8 gutted the mosque housed in an 1883 historic schoolhouse first called Oak Street School and later Strickland School. The value of the building near the intersection with Oak Street was estimated at $800,000....

A true and authentic copy of the Republican Article is attached hereto and incorporated herein by reference as Exhibit 1.

Springfield Police Chief Paula C. Meara called the destruction of the Mosque a "terrible crime" inflicted on the Muslim community and all Springfield. (Ex. 1). William J. Bennett, Hampden County District Attorney publicly stated that "[t]he only reason these juveniles targeted that building was because they wanted to steal something" and "[t]his was really an act of vandalism." (Ex. 1).

Despite the efforts of officials to quell public anxiety over the heinous nature of these crimes, fear still stalked the Springfield community. Two days after plaintiffs' arrest, another front page article appeared in The Republican. A true and authentic copy of the Republican Article on December 16, 2004 is attached hereto and incorporated herein by reference as Exhibit 2. This news report quotes Rasul F. Selfullah, the spiritual leader of the Al-Baqi Islamic Center as saying:

> area Muslims are relieved the fire was not a hate crime related to the Sept. 11, 2001, terrorist attacks and the war in Iraq.
>
> "It will alleviate fear but not remove it. It is still there...."

Ex. 2.

Public outrage over this senseless act was not confined to the Muslim community, Bishop Timothy McDonnell, head of the Roman Catholic Diocese of Springfield

46302

3

commented that it is "a sad time for the Muslim community and for all of us." He is also reported to have said "[i]n all faith traditions, the house of prayer has a special place in the life of a community. It is a place specially dedicated to the worship of God." (Ex. 2).

For the reasons set forth in Dr. Mary Elizabeth Beach's Affidavit, (attached hereto and incorporated herein by reference as Exhibit 3), in the Motion to Continue, and in the total absence of any discovery; defendants at this time cannot present the Court with complete detailed information with respect to plaintiffs' allegations, their crimes, the impact upon the community of those crimes and how all of this information plays itself out in a public high school containing students, at least some of whom may be from families belonging to the violated and destroyed place of religion.

Plaintiffs' motion for injunctive relief and indeed, their entire complaint and argument are predicated upon three allegations. Plaintiffs contend they were "excluded" from school, that exclusion was wrongful and unconstitutional. Plaintiffs' said contentions are factually misleading and legally wrong.

### Plaintiffs' Core Factual Allegation is Misleading

Plaintiffs allege they have been excluded from the Public Schools. This allegation is explicit in plaintiffs' motion for injunctive relief that asks the Court to enjoin "the defendants from the continued exclusion of the plaintiff[s] from school". This core factual allegation is woven throughout plaintiffs' filings in this litigation.[9] It is also disingenuous. Plaintiffs have not been excluded from the Springfield Public Schools. The evidence of this is now before the Court in the Affidavit of Dr. Mary Elizabeth

---

[9] (Compl., ¶¶24, p. 16 ¶C; Pls' Mem. pp. 12; 26; 28).

Beach, Special Assistant Superintendent of the Springfield Public Schools. Dr. Beach

states:

6.  George L. Oliveras and Hector L. Rivera are two of the students in
    Springfield who were charged in relation to the burning of a Mosque in
    Springfield. Both students received indefinite suspensions under
    Massachusetts General Laws chapter 71, section 37H1/2 as a result of
    their actions. The Springfield Public Schools has readmitted both George
    and Hector though changing their school assignments.

7.  George Oliveras was placed at the High School of Science and
    Technology and Hector Rivera was assigned to MCDI. Both students are
    matriculating ninth graders….

8.  The placement of the above named students in their new schools was
    effective February 8, 2005. Neither student has reported to the new school
    assignment to date.

(Ex. 3, ¶¶ 6-8).

This case is not about plaintiffs' alleged "exclusion" from school. It is about

which school plaintiffs will attend[10], a decision clearly within the administrative

discretion of public educators and administrators who are responsible for the education

and safety of *all* students that attend the public school, as well as the faculty and staff that

work in the school system. Dr. Beach has explained that:

…. all Commerce students involved in this incident will be or are assigned to high
school programs other than Commerce High School. The decision to place the
students in schools other than Commerce, we believe is within administrative
decisions of a public schools system. It is the school systems belief that the
continued presence in Commerce High School of any of these students would

---

[10] Plaintiffs allege, without burdening the record with factual support, that if they are not
readmitted to Commerce they "will be permanently deprived of the opportunity to
complete high school with … [their] peers…." Pls.' Mem. p.26. When defendants have
discovered from plaintiffs' information pertaining their respective roles in the terrible
crimes for which they were arrested – that evidence may actually show that the alleged
"deprivation" of further association with those who bear greater culpability for this
horrific crime is more of a benefit than a detriment to the plaintiffs.

have a detrimental effect on the general welfare of the school. Additionally we have concerns for the emotional and physical safety of the individual students themselves and the treatment they might receive from their fellow school mates, considering the gravity of the initial charges as well as shock and concerns expressed by many at the time of the Mosque burning.

(Ex. 3, ¶).

Applicable State Law

In Massachusetts almost all children within the age groups established for school attendance by the board of education must attend school. G.L. c. 76 § 1.[11] School officials must provide them with an adequate public education in a safe and secure learning environment. Massachusetts recognizes "that a student's interest in a public education can be forfeited by violating school rules." *Doe v. Superintendent of Sch. of Worcester*, 421 Mass. 117, 131 (1995).

The authority for the public school system to suspend students from school is primarily contained in two state laws, G.L. c.71 § 37H ("Section 37H") and G.L. c.71 §

---

[11] "Every child between the minimum and maximum ages established for school attendance by the board of education, except a child between fourteen and sixteen who meets the requirements for the completion of the sixth grade of the public school as established by said board and who holds a permit for employment in private domestic service or service on a farm, … and is regularly employed thereunder for at least six hours per day, or a child between fourteen and sixteen who meets said requirements and has the written permission of the superintendent of schools of the town where he resides to engage in non-wage- earning employment at home, or a child over fourteen who holds a permit for employment in a cooperating employment, … shall, subject to section fifteen, attend a public day school in said town, or some other day school approved by the school committee, during the number of days required by the board of education in each school year, unless the child attends school in another town, for said number of days, … or attends an experimental school project established under an experimental school plan, … but such attendance shall not be required of a child whose physical or mental condition is such as to render attendance inexpedient or impracticable subject to the provisions of section three of chapter seventy-one B or of a child granted an employment permit by the superintendent of schools when such superintendent determines that the welfare of such child will be better served through the granting of such permit, or of a child who is being otherwise instructed in a manner approved in advance by the superintendent or the school committee…." G.L. c. 76 § 1.

37H1/2 ("Section H1/2"). Under very specific circumstances[12], these laws authorize suspension[13] from the public schools of students guilty of certain types of misconduct in school and those students whose very presence in the school is detrimental to the school's general welfare. Section 37H authorizes suspension from the school district of any student found on school premises or at school-sponsored or school-related events in possession of a dangerous weapon or a controlled substance.[14] Section 37H also authorizes suspension from the school district of a student who assaults a member of the educational staff at school.[15] Section H1/2 authorizes suspension from the school district of any student charged with a felony[16], but only when the school principal determines

---

[12] Both laws provide due process to students. They require notice and a hearing before a student can be expelled; they provide for an appeal including notice and a hearing.

[13] They also authorize expulsion of students from school; however, that has not happened to these plaintiffs and need not be discussed further herein.

[14] "Any student who is found on school premises or at school-sponsored or school-related events, including athletic games, in possession of a dangerous weapon, including, but not limited to, a gun or a knife; or a controlled substance as defined in chapter ninety-four C, including, but not limited to, marijuana, cocaine, and heroin, may be subject to expulsion from the school or school district by the principal." MASS. GEN. LAWS ANN.ch. 71 § 37H(a).

[15] "Any student who is found on school premises or at school-sponsored or school-related events, including athletic games, in possession of a dangerous weapon, including, but not limited to, a gun or a knife; or a controlled substance as defined in chapter ninety-four C, including, but not limited to, marijuana, cocaine, and heroin, may be subject to expulsion from the school or school district by the principal." MASS. GEN. LAWS ANN. ch. 71 § 37H(b).

[16] Similarly section H1/2 authorizes suspension of any student adjudicated guilty, any student that has admitted guilt in court with respect to a felony or any student determined to be felony delinquent, however such a suspension can only be imposed if the principal determines that "the student's continued presence in school would have a substantial detrimental effect on the general welfare of the school."

that "the student's continued presence in school would have a substantial detrimental effect on the general welfare of the school."

The fact that the Legislature chose to combine suspension authority and expulsion authority in the same two laws, is some indication that similar interpretation will be given to those laws in cases of suspensions and expulsions. In this regard, the following observations are worth mentioning. Massachusetts does not statutorily require a local school system to "provide an educational alternative to a student who properly has been expelled for disciplinary reasons." *Doe*, 421 Mass. at 133. The admission of students who have been expelled from other school districts for disciplinary reasons under either Section 37H or Section 37H1/2 is a discretionary[17], administrative, decision to be made by the professional educators in the Springfield Public School system[18]. Plaintiffs have not been acquitted or cleared of all outstanding charges against them.[19] The reasons for

---

[17] Not even the board of education can force Springfield to admit a student who has been expelled from school under Section 37H or 37H1/2. *Board of Educ. v. School Comm. of Quincy*, 415 Mass. 240, 245 (1993) ("The Legislature did not invest the board with the power to require the school committee to provide an educational alternative for a properly expelled student.") (citations omitted); *see also Doe v. Superintendent of Sch. of Worcester*, 421 Mass. 117, 129-30 (1995) (declining "to hold … that a student's right to an education is a 'fundamental right' which would trigger strict scrutiny analysis whenever school officials determine, in the interest of safety, that a student's misconduct warrants expulsion.").

[18] "Expulsion of students who assault school personnel, with or without armament, sends an important message to other students that such intolerable behavior will result in serious consequences. It is an ancient principle that schools have an obligation to protect against the contaminating influence of student misconduct which sometimes involves 'vicious propensities and habits.' The wrongs to which expulsion in this case extend go beyond instilling 'the highest toned morality.' No less than the welfare and safety of those entrusted to teach in public schools is at stake." *Commonwealth. v. Stone S.*, 45 Mass. App. Ct. 259, 263 (1998) (citations omitted).

[19] Plaintiffs' legal claims are largely dependent upon legally erroneous assertions and totem pole hearsay.

46302

8

this are explained in the affidavit of Assistant Hampden County District Attorney Brett J.

Vottero ("ADA Voterro").[20]  A true and authentic copy of the ADA Voterro's affidavit is

attached hereto as Exhibit 4 and incorporated herein by reference.  ADA Voterro states

that he "was assigned to handle a series of cases brought against seven Springfield

Juveniles for breaking into and burning a Springfield mosque." (Ex. 4, ¶3).  ADA

Voterro explains the agreement attached to plaintiffs' complaints as follows:

> The records reveal that certain charges which were brought against the juveniles were continued on January 21, 2005, pursuant to the provisions of Mass. General Laws, Chapter 276, Section 87, to January 22, 2007.
>
> A continuation under the provisions of Chapter 276, Section 87, is the imposition of a period of pre-trial probation, assented to by both the Commonwealth and the Defendant; it is not tantamount to either an acquittal or a conviction.
>
> In this case, the Juvenile Court ordered certain conditions with which the Juveniles were to comply during the period of probation.
>
> These conditions include, *inter alia,* community service, a letter of apology, compliance with an agreement with the Commonwealth.
>
> In the event that all conditions set by the Court are complied with during the period of the continuance, it is expected that the case would be dismissed at the termination of the period.
>
> If, on the hand, there is any violation of any condition set by the Court, the case may be brought forward and scheduled for trial.
>
> The documents attached show that this case was continued with probationary conditions to the date of January 22, 2007.
>
> Barring some misconduct by the defendant, or a motion brought by him to bring the case forward for trial, the case will remain open until said date.

---

[20] ADA Voterro is an experienced attorney (Ex. 4, ¶2) and cognizant of the legal requirements "for confidentially of Juvenile court proceedings" (Ex. 4, ¶4).  His affidavit is expressly limited to an explanation of the public information filed by plaintiffs in this litigation.  (Ex. 4, ¶¶ 5-6; Compl. Ex. A; Pls.' Mem. Ex. A).

46302

(Ex. 4, ¶¶7-14).

"Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected. As we have said, the undisputed importance of education will not alone cause this Court to depart from the usual standard for reviewing a State's social and economic legislation." *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 35 1298 (1973).

<u>Conclusion</u>

Because plaintiffs will not suffer any harm by attending the public schools to which they have been assigned by the Springfield Public School system if the injunctive relief is denied; because plaintiffs complaints are legally defective and factually unsupportable, there is a reasonable likelihood that they will dismissed and because it would harm the safety and welfare of the students that attend Commerce High School and possibly jeopardize plaintiffs own security and welfare, the balance of harm clearly favors denial of all relief requested by plaintiffs.

Respectfully submitted

THE DEFENDANTS

Harry P. Carroll, Esq.
Deputy City Solicitor

City of Springfield, Law Department
36 Court Street
Springfield, MA  01103
Phone 413-787-6085
Fax    413-787-6173

46302

BBO # 076060

## CERTIFICATE OF SERVICE

To:

Derek M. Beaulieu, Esq.
1242 Main Street, Suite 306
Springfield, MA 01103


I, Harry P. Carroll, hereby certify that I served the above notice on the plaintiff in the above-entitled action by hand delivering a copy thereof to counsel of record on this 25th day of February 2005.

Harry P. Carroll, Esq.,
Deputy City Solicitor

46302

11

EXHIBIT

©2004 The Republican Company

Final Edition

# The Republican.

**WEDNESDAY, DECEMBER 15, 2004**

50¢

Today: High 26, Low 2
Complete forecast, Page C8
Weather anytime: MassLive.com

PERIODICAL ROOM
SPRINGFIELD, MASS.

# Teens charged in mosque fire

## Investigators rule out hate crime

**By PATRICK JOHNSON**
pjohnson@repub.com

SPRINGFIELD – Police charged seven Springfield teenagers with setting the fire last week that destroyed the Al-Baqi Islamic Center at 495 Oak St. and sparked suspicions among area Muslims that they had been targeted because of their religion.

The arrests beginning Monday night came slightly less than a week after a fire Dec. 8 gutted the mosque housed in an 1883 historic schoolhouse first called Oak Street School and later Strickland School. The value of the building near the intersection with Oak Street was estimated at $800,000.

District Attorney William M. Bennett, speaking yesterday at a press conference at the Raymond M. Sullivan Safety Com-

plex on Carew Street, said investigators determined the fire "had nothing to do with anti-Islamic sentiments."

After breaking into the building and stealing cash, candy and other items, the teenagers set the fire that consumed the Islamic center, he said.

"The only reason these juveniles targeted that building was

because they wanted to steal something," Bennett said. "This was really an act of vandalism."

All of the teenagers live near the mosque, but neither the boys nor their parents are members, Bennett said.

Rasul F. Seifullah, the mosque's imam or leader, said he was relieved that investigators ruled out the possibility that

the fire was a hate crime. Still, he was disheartened that neighborhood teenagers were charged with burning a place of worship for about 100 area Sunni Muslims.

"A lot of young people are actually lost," Seifullah told The Associated Press. They have no focus, no discipline, no purpose. I'd like to sit down and talk to them and find out where they're

Please see **mosque**, Page M





" The only reason that
niles tar
geted that
building was because they
wanted to steal something.

This was really an act of
vandalism."

Hampden County District At
torney William J. Bennett



## ARRESTS ANNOUNCED

Staff photo by MIEKE ZUIDERWEG

Hampden County District Attorney William M. Bennett, standing, addresses the media about the arrests of seven teenagers in connection with the break-in and fire at the Al-Baqi Islamic Center in Springfield last week. Joining Bennett at the Raymond M. Sullivan Safety Complex were, from left, Springfield City Councilor Kateri B. Walsh, Police Chief Paula C. Meara, Fire Chief Gary S. Cassanelli, Police Commissioner William A. Hurley and state Trooper Michael J. Blanchette.

# Mosque: Teens charged in fire

**Continued from Page A1**

coming from and what was on their minds when they did this."

Seifullah said the mosque's insurance company and city officials will determine whether the mosque can be rebuilt or whether the remaining structure must be demolished and replaced.

Members had been renovating the center and had spent thousands of dollars on furniture and equipment.

Bennett said two of the teens were arrested Monday night, while the other five were arrested yesterday morning and afternoon.

Three were arraigned yesterday in Juvenile Court, and four others were being held overnight at the police Youth Assessment Center, he said.

Their names were not released because of their age. Their names will become public if Bennett decides to try them as adults.

Each was charged with arson, breaking and entering and larceny of more than $250.

The total value of what was stolen was not disclosed, but Police Chief Paula C. Meara said it was not much more than $250.

Bennett declined to say much about how the fire started other than to say no accelerant was used. He declined to answer when asked if the teens started the fire to conceal their crimes.

Meara called the destruction a "terrible crime" inflicted on the Muslim community and on Springfield.

"It will affect our entire community, not just their small community," she said.

State Fire Marshal Stephen D. Coan credited the joint effort by the different city, state and federal agencies with solving the crime.

"Whenever a place of worship

quickly as possible, learn the facts and alleviate the anxiety of the community," he said. "I believe that has been done."

Coan called the investigation a "textbook example" of cooperation between state, local and federal investigators. Bennett also said the investigation was aided by community residents who provided vital information that led to the arrests.

The fire was investigated jointly by the Springfield Arson and Bomb Squad, state fire marshal, state troopers assigned to Bennett's office, the Federal Bureau of Investigation and agents with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives.

2

EXHIBIT



The Republican, Thursday, December 16, 2004

Springfield Edition

# The Republican

©2004 The Republican Company

· NATION ·

**THURSDAY, DECEMBER 16, 2004**

50¢

Today: High 42, Low 16
Complete forecast, Page B8
Weather anytime: MassLive.com

# Imam blames teens, adults

The Interfaith Council of Churches is raising money to help the Al-Baqi Islamic Center recover from the Dec. 8 arson, which gutted the building.

By PATRICK JOHNSON
pjohnson@repub.com

SPRINGFIELD – The spiritual leader of the Al-Baqi Islamic Center said yesterday that the failure of adults in the community to provide direction to youths is linked to the arson of the mosque.



Rasul F. Seifullah

Seven 15-year-old boys have been charged with the Dec. 8 arson that gutted the Sunni Muslim mosque at 495 Union St. They pleaded innocent in arraignments held yesterday and Tuesday. Bail amounts ranged from $200 to $1,000.

Imam Rasul F. Seifullah said the crime reflects the failure of adults to offer direction and purpose.

"We failed them in many ways," he said of the teens.

"I'm not taking their responsibility away," he added. "They are still accountable for their decision. God gave them free will."

Hampden County District Attorney William M. Bennett said earlier that the teens live in the community, but are not members of the mosque.

One day after authorities

See Mosque, Page A11

Case 3:05-cv-30044-MAP     Document 8-2     Filed 02/25/2005     Page 6 of 16

# Mosque: Spiritual leader disappointed

**Continued from Page A1**

charged the teens with breaking into the mosque, Seifullah said he is relieved the building was not a target of a hate crime, but finds it puzzling that it was targeted at all.

"They told me it was a break-in. I can see it, but I can't understand it," he said. "I still have a problem with making the decision to burn the building down." Seifullah said he wants to meet with the teens.

The teens are accused of breaking into the mosque to steal money, candy and other items. They then set a fire on the second floor, although officials declined to say exactly why.

Bennett said the motive was vandalism, not hatred.

Dangerousness hearings for five of the teens have been scheduled for tomorrow to determine if they can be held without bail. Pretrial hearings are scheduled for Jan. 7, he said.

Assistant District Attorney Brett J. Vottero said yesterday the investigation is ongoing, and once it is completed, Bennett will decide whether to seek a grand jury indictment.

If indictments are returned, the teens could be tried as youthful offenders. If so, the trial in Juvenile Court would be open to the press and public, he said.

Seifullah said area Muslims are relieved the fire was not a

> **" I'm not taking their responsibility away.**
>
> **They are still accountable for their decision. God gave them free will. "**
>
> **Imam Rasul F. Seifullah**

hate crime related to the Sept. 11, 2001, terrorist attacks and the war in Iraq.

"It will alleviate fear but not remove it. It is still there," he said.

Seifullah said he was pleased to receive offers of support from those of other faiths.

"For a church to offer a place of worship to observe Islam, that is great," he said.

The mosque will likely need temporary space for Friday services for at least a year while the Oak Street building is repaired or replaced, he said.

Last week's service took place at Muhammad's Mosque 13 on State Street.

The Rev. Karen Rucks, executive director of the Interfaith Council of Churches, said the council is launching a fund-raising drive to assist the mosque.

Donations may be made to the Interfaith Council of Churches, 39 Oakland St.,

Springfield, MA, 01108. Inquiries may be made to (413) 733-2149.

Checks should be made to the council, with a notation that it is for the mosque, she said. "Every penny will go to the mosque," she said.

Between five and 10 churches of different faiths represented on the council have offered temporary meeting space for the

mosque, she said.

Included is St. Michael's Church in East Longmeadow, said associate pastor Sister Mary McGeer. She said Seifullah plans to meet next week with the parish to discuss the offer.

"We will be graced in each other's presence. We are all one with God," she said.

Bishop Timothy McDonnell,

head of the Roman Catholic Diocese of Springfield, called the fire a "sad time for the Muslim community and for all of us."

McDonnell said in a statement, "In all faith traditions, the house of prayer has a special place in the life of a community. It is a place specially dedicated to the worship of God."

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HECTOR RIVERA )
)
)
v. )          CASE NO. 05-3044 MAP
)
CITY OF SPRINGFIELD, ET AL )
)

GEORGE OLIVERAS )
)
)
v. )          CASE NO. 05-3045 MAP
)
CITY OF SPRINGFIELD, ET AL )
)

## AFFIDAVIT OF DR. MARY ELIZABETH BEACH

I, Dr. Mary Elizabeth Beach take oath and state that:

1.  I have personal knowledge and information of the facts stated herein and if called as a witness, I would testify competently thereto.

2.  I have spent my entire professional career in the field of education.  I have an Ed.D., Educational Administration (University of Vermont, Burlington, VT. 1992); an M.Ed., Guidance and Counseling (Lyndon State College, Lyndonville, VT, 1977) and a B.S., Special Education and Elementary Education (Lyndon State College, Lyndonville, VT, 1972).  I have worked as a professional educator and educational administrator in various positions since 1972.

1

46299

3.  Currently I am employed by the City of Springfield, Massachusetts in the position of Special Assistant to the Superintendent for Research and Accountability/Chief Academic Officer, Springfield Public Schools. I have served in this position since February 2002.

4.  My present responsibilities include the supervision and management of all federal programs, academic assessments, research and curriculum and instruction. In addition I am the zone administrator for one third of the district schools.

5.  Springfield Public Schools District has 48 schools. Zone III has 18 sites of which Commerce High School is one. Commerce's enrollment is 1790 students.

6.  George L. Oliveras and Hector L. Rivera are two of the students in Springfield who were charged in relation to the burning of a Mosque in Springfield. Both students received indefinite suspensions under Massachusetts General Laws chapter 71, section 37H1/2 as a result of their actions. The Springfield Public Schools has readmitted both George and Hector though changing their school assignments.

7.  George Oliveras was placed at the High School of Science and Technology and Hector Rivera was assigned to MCDI. Both students are matriculating ninth graders. Please note that all Commerce students involved in this incident will be or are assigned to high school programs other than Commerce High School. The decision to place the students in schools other than Commerce, we believe is within administrative

2

decisions of a public schools system. It is the school systems belief that the continued presence in Commerce High School of any of these students would have a detrimental effect on the general welfare of the school. Additionally we have concerns for the emotional and physical safety of the individual students themselves and the treatment they might receive from their fellow school mates, considering the gravity of the initial charges as well as shock and concerns expressed by many at the time of the Mosque burning.

8.     The placement of the above named students in their new schools was effective February 8, 2005. Neither student has reported to the new school assignment to date.

9.     On behalf of Springfield Public Schools I want to apologize to the court for not being able to provide sufficient and relevant information at this time. The schools are on winter break, consequently, appropriate school and district personnel have not been available this week to gather all the necessary information. And, since schools are closed, we take this opportunity during the school year to update the student information system (SASI), by shutting the system down to import, export and inquiry of student information.

Subscribed and sworn to under the pains and penalties of perjury this 25th day February 2005.

_Mary Elizabeth Beach_

Dr. Mary Elizabeth Beach

3

46299

Special Assistant Superintendent
Springfield Public Schools

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.                                    Springfield, February 25, 2005

Then personally appeared the above named Dr. Mary Elizabeth Beach and made oath that
the above affidavit is true to the best of her knowledge and belief, and that said affidavit
is given of her own free act and deed, before me.

Notary Public:
My Commission
Expires:

JAMES J. McVEY
NOTARY PUBLIC
My Commission Expires
November 25, 2005

4

46299

4

AFFIDAVIT

Now comes Brett J. Vottero, upon his oath and makes the following affidavit:

1. I am an assistant district attorney in the Office of the Hampden County District Attorney.

2. I have been a member of the Massachusetts bar since 1985.

3. I was assigned to handle a series of cases brought against seven Springfield Juveniles for breaking into and burning a Springfield mosque.

4. I am aware of provisions within the Massachusetts General Laws, providing for confidentially of Juvenile court proceedings.

5. Nevertheless, I have been asked to explain certain documents which have been attached to a complaint (s) filed in the Federal District Court in Springfield for the District of Massachusetts. Said documents are attached hereto and marked A and B.

6. As it is my understanding that these documents are public record, I limit my affidavit to commenting on these public records.

7. The records reveal that certain charges which were brought against the juveniles were continued on January 21, 2005, pursuant to the provisions of Mass. General Laws, Chapter 276, Section 87, to January 22, 2007.

8. A continuation under the provisions of Chapter 276, Section 87, is the imposition of a period of pre-trial probation, assented to by both the Commonwealth and the Defendant; it is not tantamount to either an acquittal or a conviction.

9. In this case, the Juvenile Court ordered certain conditions with which the Juveniles were to comply during the period of probation.

10. These conditions include, *inter alia*, community service, a letter of apology, compliance with an agreement with the Commonwealth.

11. In the event that all conditions set by the Court are complied with during the period of the continuance, it is expected that the case would be dismissed at the termination of the period.

12.    If, on the hand, there is any violation of any condition set by the Court, the case may be brought forward and scheduled for trial.

13.    The documents attached show that this case was continued with probationary conditions to the date of January 22, 2007.

14.    Barring some misconduct by the defendant, or a motion brought by him to bring the case forward for trial, the case will remain open until said date.

Signed under the penalties of perjury this twenty-forth day of February, 2005

Brett J. Vottero
Assistant District Attorney

BJV:kac

HAMPDEN, ss.

JUVENILE COURT DEPARTMENT
HAMPDEN COUNTY DIVISION
DOCKET NO(S): D20453375,6

COMMONWEALTH OF MASSACHUSETTS

v.

DOB: 9-14-89

GEORGE L. OLIVERAS ADDRESS: 56 FOSTER ST. (2ND)
SPFLD, MA 01105

## MASSACHUSETTS GENERAL LAWS CHAPTER 276, SECTION 87 AGREEMENT

I agree to comply with the conditions outlined below. I understand that these conditions, when signed by
all parties, will become an order of this court.

I understand that this case will be dismissed upon successful completion of these conditions within the
specified time period, and that failure to comply can result in further actions against me by this court.

The term of probation from: 1-21-05     to:     1-22-07   w/ SUPERVISION

## THE STANDARD CONDITIONS OF PROBATION  (Strike out conditions not imposed)
(1) Obey all court orders and all local, state, and federal laws.
(2) You shall notify your probation officer immediately of any change of residence or
    employment.
(3) You shall report to a probation officer at such time and place as he/she requires.
(4) You must not leave the Commonwealth of Massachusetts without the express consent of the
    Probation Officer. Such permission may be conditioned upon your agreement to waive
    extradition.

And in addition:
- ATTEND SCHOOL DAILY.
- LETTER OF APOLOGY TO MOSQUE.
- 160 Community Service.
- ABIDE BY PROBATION AGREEMENT.

So Ordered _____
                          Justice

X _____          X _____
        Juvenile                              Parent or Legal Guardian

_____          _____
Attorney for Juvenile (if applicable)    (Assistant District Attorney)

Date: __1-21-05_____          _____
                                              Probation Officer

Any payments ordered are payable to Donald P. Whitney, Clerk-Magistrate
Hampden County Juvenile Court 80 State Street, Springfield, MA 01103
(Money Order, Bank Check, Certified Personal Check)

EXHIBIT "A"

02/24/2005  13:47    4137876173                                                  PAGE 16

## COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss

COMMONWEALTH OF MASSACHUSETTS

JUVENILE COURT DEPARTMENT
HAMPDEN COUNTY DIVISION
DOCKET NO(S): DL04S3370
                           3369

V.

Hector Rivera                      DOB: 3/17/89

_____          ADDRESS: 56 Foster St. 2ND SpfLD.

## MASSACHUSETTS GENERAL LAWS CHAPTER 276, SECTION 87 AGREEMENT

I agree to comply with the conditions outlined below. I understand that these conditions, when signed by all parties, will become an order of this court.

I understand that this case will be dismissed upon successful completion of these conditions within the specified time period, and that failure to comply can result in further actions against me by this court.

The term of probation from: 1/21/05                    to: 1/22/07

## THE STANDARD CONDITIONS OF PROBATION   (Strike out conditions not imposed)

1. Obey all court orders and all local, state, and federal laws.
2. You shall notify your probation officer immediately of any change of residence or employment.
3. You shall report to a probation officer at such time and place as he/she requires.
4. You must not leave the Commonwealth of Massachusetts without the express consent of the Probation Officer. Such permission may be conditioned upon your agreement to waive extradition.

And in addition:
Remain in school
Letter of apology to Al Baqi Mosque
160 HRS Community Service
Abide by Cooperation Agreement with DA office

So Ordered _____
                                    Justice

_____          _____
        Juvenile                        Parent or Legal Guardian

_____          _____
Attorney for Juvenile (if applicable)    Assistant District Attorney

Date: 1/21/05                     _____
                                     Probation Officer

Any payments ordered are payable to Donald P. Whitney, Clerk-Magistrate
Hampden County Juvenile Court 80 State Street, Springfield, MA 01103
(Money Order, Bank Check, Certified Personal Check)

EXHIBIT "B"